IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Richmond Division**

| | |
|---|---|
| REYNOLDS FOIL INC, | ) |
| Plaintiff. | ) ) ) |
| v. | ) Case No. 3:09CV657 |
| SHWETHA PAI, | ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION
**(Denying Motion to Dismiss for Lack of Personal Jurisdiction and Denying Motion to Dismiss for Lack of Proper Venue or to Transfer Venue)**

This case is before the Court on Defendant's Motion to Dismiss or, alternatively, to Transfer Venue to the District of New Jersey. Defendant argues that this Court lacks personal jurisdiction over her and that the Eastern District of Virginia is not a proper venue for this matter. In the alternative, Defendant moves that the case be transferred to the United States District Court for the District of New Jersey.

The parties have filed memoranda of law and exhibits in support of their respective positions. Following oral argument on March 19, 2010, the Court ruled from the bench that it has personal jurisdiction over the Defendant, that the Eastern District of Virginia is a proper venue for this matter, and that a transfer of venue is not warranted. The Court informed the parties that this written memorandum opinion would follow. For the reasons stated herein, the Court denies the Defendant's Motion to Dismiss and denies the Motion to Transfer Venue to the District of New Jersey.

## I.

Plaintiff, Reynolds Foil, Inc. ("Reynolds"), is a corporation organized under the laws of the state of Delaware with its principal place of business in Richmond, Virginia. Defendant, Shwetha Pai ("Pai"), is a resident of the state of New Jersey and a former employee of Reynolds Foil, Inc. Defendant worked for Plaintiff from 2008 to 2009.

The underlying case concerns a Tuition Assistance Program Repayment Agreement ("Agreement") signed between the Defendant and Alcoa, the corporation to which Plaintiff is the successor. Under the terms of the Agreement, Alcoa agreed to pay the tuition and fees associated with Defendant's attainment of an Executive MBA. Additionally, the terms of the Agreement stipulated that the Defendant would repay Alcoa if she were to voluntarily resign within three years of the completion of her MBA.[1] In or about September 2009, Defendant completed her MBA degree. After receiving her MBA, Defendant claims that Reynolds constructively discharged her by changing material terms and conditions of her employment. Reynolds maintains that she was terminated for refusing to relocate to Illinois or for failing to accept a new work assignment that did not require relocation.

Plaintiff alleges that Defendant, by failing to repay the Plaintiff and by stating her

---

[1] The parties dispute the extent to which the Alcoa Tuition Assistance Program Repayment Agreement governed their interactions. The Plaintiff contends that both Reynolds and Pai assumed the legal obligations of the tuition assistance agreement after Alcoa sold its packaging and consumer group. Defendant claims that this agreement was not binding on the parties and that her tuition was paid as part of her compensation package. This matter, however, has no bearing on personal jurisdiction or venue, and the Court will not address it here.

intentions not to pay, has breached the contract between the two parties. Plaintiff also seeks a declaratory judgment holding that the Agreement is legally valid and binding on the Defendant. Finally, Plaintiff seeks judgment in the amount of the tuition and fees paid on Defendant's behalf.

On January 19, 2010, Defendant filed the immediate motion, urging the Court to dismiss Plaintiff's claims for lack of personal jurisdiction, improper venue, or, in the alternative, to transfer venue to the United States District Court for the District of New Jersey.

## II.

When personal jurisdiction is challenged, as it is here, by a Rule 12(b)(2) motion to dismiss, the burden is on the plaintiff to "make a prima facie showing of a sufficient jurisdictional basis in order to survive the jurisdictional challenge." *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). If a plaintiff makes the requisite showing, the defendant then bears the burden of presenting a "compelling case," that, for other reasons, the exercise of jurisdiction would be so unfair as to violate due process. *Burger King v. Rudzewicz*, 471 U.S. 462, 477-78 (1985). For purposes of the motion to dismiss, the reviewing court may presume that any uncontradicted evidence submitted by either party is true. *See id.*

As the Fourth Circuit has recognized, an analysis of personal jurisdiction is normally a two-step inquiry consisting of both statutory and constitutional components.

*Peanut Corp. of Am. v. Hollywood Brands, Inc.*, 696 F.2d 311, 313 (4th Cir. 1982). This Court may only exercise personal jurisdiction over a non-resident defendant if such jurisdiction is authorized by Virginia's long-arm statute (Va. Code Ann. § 8.01-328.1) and such exercise of jurisdiction is consistent with the due process clause of the Fourteenth Amendment. *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009).

Virginia's long arm statute provides in pertinent part that: "A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's ... [t]ransacting any business in this Commonwealth ...." Va. Code Ann. § 8.01-328.1(A)(1). The Fourth Circuit has recognized that "Virginia's long-arm statute is intended to extend personal jurisdiction to the extent permissible under the due process clause ...." *Consulting Eng'rs*, 561 F.3d at 277. It is appropriate, then, for this Court to begin its analysis by examining whether the constitutional standard is met. *See id.*

To satisfy the due process requirement of the Constitution, the defendant must have sufficient "minimum contacts" with the Commonwealth of Virginia that the exercise of jurisdiction over the defendant "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citation and quotation omitted). "Minimum contacts" are present if the defendant "purposefully directed his activities at the residents of the forum" and the plaintiff's cause of action

"arise[s] out of" those activities. *Burger King Corp.*, 471 U.S. at 462 (1985) (citation and quotation omitted).

The Fourth Circuit has adopted a three-part test to determine whether exercise of specific personal jurisdiction is appropriate. *Id.* at 278. This test requires the Court to focus on: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002) (quotations and citations omitted).

### 1. Purposeful Availment

There is no clear formula for determining what constitutes "purposeful availment," but the Fourth Circuit, in *Consulting Engineers*, provided a number of factors for this Court to consider:

- whether the defendant maintains offices or agents in the forum state;
- whether the defendant owns property in the forum state;
- whether the defendant reached into the forum state to solicit or initiate business;
- whether the defendant deliberately engaged in significant or long-term business activities in the forum state;
- whether the parties contractually agreed that the law of the forum state would govern disputes;
- whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship;
- the nature, quality and extent of the parties' communications about the business being transacted; and
- whether the performance of contractual duties was to occur within the forum.

*Consulting Eng'rs*, 561 F.3d at 278 (citations omitted).

The Court recognizes that the Defendant does not meet the first, second or fifth factors, as she does not maintain offices or agents in the forum state, does not own property in the forum state, and the parties did not contractually agree that the law of the forum state would govern their disputes. The combination of the other factors, though, provides support that the Defendant did have sufficient minimum contacts with the Eastern District of Virginia.

Pai argues that the third factor, whether she reached into the forum state, is not met, but the Court disagrees. "With respect to interstate contractual obligations, [courts] have emphasized that parties who 'reach out beyond one state and create continuing relationships and obligations with the citizens of another state' are subject to regulations and sanctions in the other State for the consequences of their activities." *Burger King*, 471 U.S. at 473 (quoting *Travelers Health Ass'n v. Virginia*, 334 U.S. 643, 647 (1950)). In this case, in February 2008, Alcoa, Defendant's former employer, sold its food packaging and consumer business. Defendant, instead of leaving the company, agreed to become an employee of Reynolds. Defendant thus "reached" into Virginia by accepting new contractual employment terms and by maintaining employment with a Virginia-based company. Defendant's acceptance of employment, coupled with the 103 days that Defendant conducted business in the Eastern District of Virginia over the course of her employment, is sufficient evidence to conclude that the Defendant "reached" into or sought a business relationship in the forum jurisdiction.

Pai also argues that the fourth factor, whether she engaged in significant or long-term business activities within the forum state, is also not met, but the Court again disagrees. Defendant Pai traveled to Richmond, Virginia on 103 days over the course of her employment with Reynolds. According to Plaintiff's complaint, she worked 441 days for Reynolds. Therefore, using her own data, she spent 23 percent of her total work days with Reynolds in Richmond, Virginia. In *FBR Capital Markets & Co. v. Short*, Judge O'Grady found that "accepting and maintaining employment with a Virginia-based company, interviewing for employment in Virginia, and traveling to Virginia for training purposes" is enough to find sufficient contacts with the state. *See* 2009 U.S. Dist. LEXIS 94558 at * 8 (E.D. Va. Oct. 9, 2009).

In the immediate case, Defendant also accepted and maintained employment with a Virginia-based company and traveled to Virginia for job-related purposes. Although she did not interview for employment in Virginia, she did discuss the terms of her employment on at least one occasion in Richmond, Virginia. Additionally, in *Hirschkop & Grad, P.C. v. Robinson*, the Fourth Circuit determined that a defendants' two business meetings in Virginia with their Virginia-based law firm, along with correspondence and telephone conversations conducted while the plaintiff was in Virginia, in addition to checks mailed to Virginia, were enough to constitute significant contacts. 757 F.2d 1499, 1503 (4th Cir. 1985). Here, Defendant's contacts with Virginia were at least as substantial as those of the Defendant in *Hirschkep*. Thus, the Court finds that the fourth factor is met.

Defendant next denies that she made in-person contact with a resident of the forum in the forum state regarding the business relationship. She states instead that "during all times relevant to plaintiff's complaint, [she] acted as an employee and agent of Reynolds" in her travels to Virginia. Pai Aff. § 9. The Court finds this argument unpersuasive. Here, Defendant conflates the terms "in-person" and "personal." While the Court recognizes that Defendant was not acting in a *personal* capacity during her trips to Virginia, she was certainly there *in-person*, which is what the Fourth Circuit's test for purposeful availment requires. Defendant, in fact, admits that she had in-person contact with a resident of the forum state regarding the business relationship when she spoke with Mr. Graham, the Chief Financial Officer of the Reynolds Packaging Group, about her retention bonus while in Richmond.

Regarding the sixth factor, the nature, quality and quantity of the contacts with the forum, "a single act by a Defendant can be sufficient to satisfy the necessary 'quality and nature' of such minimal contacts, although 'casual' or 'isolated' contacts are insufficient to trigger such an obligation." *CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 293 (4th Cir. 2009) (citing *Int'l Shoe*, 326 U.S. at 316). In the instant case, for the reasons explained above, the nature, quality and quantity of Defendant's contacts rise above the level of casual and isolated contacts, and are similar to the nature and quality of contacts found sufficient by courts in the Fourth Circuit, such as the defendants in *Hirschkop*.

Defendant also maintains that her travel to Virginia was not related to any contractual obligation to perform duties in the Commonwealth of Virginia, but the Court does not find this argument compelling. Pai agreed to work with Reynolds in its Packaging and Consumer Foods Group business which is headquartered in Richmond. As Defendant conceded during oral argument, her travels to Virginia were all in performance of her employment relationship with Reynolds, of which her tuition agreement was also a part.

For all of these reasons, this Court finds that there is sufficient evidence to find that the first prong of the personal jurisdiction test, whether the Defendant has purposefully availed herself of the privilege of conducting business in the forum state, has been met.

## 2. Claims Arising Out of Activities Directed Toward the Forum

The second prong of the test is whether the Plaintiff's claims arise out of these connections with the Commonwealth of Virginia. *See ALS Scan, Inc.*, 293 F.3d at 712. Defendant characterizes the present case as turning only on the tuition agreement that she entered into with Plaintiff and argues this claim does not arise out of her contacts with Virginia. The defendant's perspective is too narrow. The claim is more properly categorized as a dispute over the terms and conditions of her employment with a Virginia-based company. When a claim is "based on a contract which had substantial connection

with that State" then the Plaintiff's claims can be said to arise out of connections with that forum. *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957).

Other persuasive authority from this district supports this position. In *FBR Capital Markets*, the Plaintiff had also signed an employment agreement with a Virginia-based company, with a separate covenant not to compete and accompanying non-solicitation agreement. The plaintiff in that case argued similarly that her claim regarding the non-compete agreement did not arise from her contacts with the forum, but the court declined to adopt this logic. Instead the court viewed the claim more generally as "over the terms of her employment." *See* 2009 U.S. Dist. LEXIS 94558 at * 8-9. On this basis, the Court finds a sufficient relationship between the claim and Defendant's contacts with Virginia to satisfy the second prong of the personal jurisdiction test..

## 3. Constitutional Reasonability of Jurisdiction

The third prong of the *ALS Scan* test is whether the exercise of jurisdiction would be constitutionally reasonable. This prong is designed to permit courts to evaluate any other factors that might bear on the propriety of exercising personal jurisdiction over a defendant. Such factors include:

> (1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the interests of the states in furthering substantive social policies.

*See Burger King*, 471 U.S. at 477 (citing *World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 292 (1980)).

Regarding the first factor, clearly the burden on any defendant is greater when he or she is forced to litigate in a forum other than the state in which they reside, but the Court is not convinced that the burden is excessive in this case. Defendant has made numerous employment related visits to Richmond, Virginia. In fact, she spent approximately 23 percent of her time there while employed by Reynolds. Travel to Virginia therefore is not unreasonable.

Regarding the interest of the forum state in adjudicating the dispute, "[a] state generally has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." *Burger King*, 471 U.S. at 473 (citing *McGee*, 355 U.S. at 223). The Court thus finds that the Eastern District of Virginia has a strong interest in this action, as it is the state in which Reynolds is headquartered. *See Lycos, Inc. v. TiVo, Inc.*, 499 F. Supp 2d 685, 691 (E.D. Va. 2007). Although the burden on the Defendant in litigating the case may be greater in this forum, allowing the Defendant to litigate in the District of New Jersey or another venue would merely shift the burden to the Plaintiff, and this is not a compelling reason to decline personal jurisdiction. *See Bd. of Trs., Sheet Metal Workers Nat'l Fund v. Baylor Heating and Air Conditioning, Inc.*, 702 F. Supp. 1253, 1259 (E.D. Va. 1988).

The third, fourth and fifth factors– the plaintiff's interest in obtaining convenient and effective relief, the shared interest of the states in obtaining efficient resolution of disputes, and the interests of the states in furthering substantive social policies– are not

advanced by the parties or relevant to this case. Neither party has raised these other factors.

Taking into consideration all relevant factors, the Court finds that the exercise of jurisdiction over Defendant Pai is constitutionally reasonable. The fulfillment of this third prong of the personal jurisdiction test, together with the first and second prongs noted above, is sufficient for this Court to conclude that it can permissibly exercise specific personal jurisdiction over the Defendant.

Plaintiff also argues that application of general jurisdiction over Defendant is appropriate. While the Supreme Court has expressed doubts as to whether general jurisdiction through "continuous and systematic contacts" with a forum can ever apply to an individual, there is no clear rule. *Burnham v. Superior Court*, 495 U.S. 604, 609 (1990). This Court finds that Defendant's numerous contacts with Virginia are "continuous and systematic" such that exercise of general jurisdiction would also be justified.

### III.

Defendant also urges the Court to dismiss this case for improper venue. In cases based on diversity jurisdiction, venue is proper in:

> (1) a judicial district where any defendant resides, if all defendants reside in the same state (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if

there is no district in which the action may otherwise be brought.

28 U.S.C. 1391(a).

The first section of the venue statute is not at issue since the Defendant is a resident of New Jersey and the third section is only applicable in the event that no other appropriate district can be found. Accordingly, this Court will focus its venue analysis on the second portion of the statute.

Since venue may be proper in more than one district, the Fourth Circuit has determined that in deciding whether a "substantial" part of the events or omissions under which a claim arose occurred in a district, a court should not only look to the events that directly underlie the claim at issue, but "should review the entire sequence of events underlying the claim." *Mitrano v. Hawes*, 377 F.3d 402, 405 (4th Cir. 2004) (quotations omitted). Other decisions from the Eastern District of Virginia are instructive on what should be considered as part of the sequence of events underlying the claim. In *Product Group International v. Goldman*, a Virginia-based company brought suit against a Florida resident for breach of non-solicitation and confidentiality agreements. Although the event most directly underlying the claim was Goldman's attempt to lure one of the plaintiff's clients to another company in violation of the agreement, the court still considered all of his employment related activities with the Plaintiff company as being part of the series of events underlying the claim. 337 F. Supp. 2d 788, 798-99 (E.D. Va. 2004). The court

squarely stated that the "defendant's communications with and visits to [the] headquarters come within the sequence of events underlying the claim." *Id.* (quotations omitted).

The same reasoning applies to the case at hand. Here, the event that most directly precipitated the claim was Defendant's breach of the tuition assistance agreement, but the series of events that gave rise to the claim more broadly include all of Defendant's employment related activities while affiliated with Reynolds. These include a series of business contacts with Virginia, and "these same business contacts provide a basis for venue as well as personal jurisdiction." *Goldman*, 337 F. Supp. 2d at 799; *cf. Ciena Corp. v. Jarrard*, 203 F.3d 312, 318 (4th Cir. 2000). Other courts in this district have uniformly "found venue appropriate when a claim against a nonresident defendant is brought by a plaintiff who is headquartered in the district and where the defendant had communications with and visits to the headquarters in the district," *FBR Capital Markets*, 2009 U.S. Dist. LEXIS 94558 at * 8, and this Court similarly finds that venue in this district is appropriate in this case.

### IV.

Turning next to Defendant's motion to transfer venue, a district court may transfer a civil action to any other appropriate district court "for the convenience of parties and witnesses, and in the interest of justice ...." 28 U.S.C. § 1404(a). The decision whether to transfer is committed to the sound discretion of the reviewing court, *Koh v. Microtek Int'l Inc.*, 250 F. Supp. 2d 627, 630 (E.D. Va. 2003), and the "party seeking such discretionary

transfer 'bears the burden of demonstrating that the balance of convenience among the parties and witnesses is strongly in favor of the forum to which transfer is sought.'" *Nossen v. Hoy*, 750 F. Supp. 740, 742 (E.D. Va. 1990) (quoting *Medicenters of Am., Inc. v. T&V Realty & Equip. Corp.*, 371 F. Supp. 1180, 1184 (E.D. Va. 1974)). "'In deciding whether to transfer pursuant to § 1404(a), this court must consider four factors: (1) the plaintiff's [initial] choice of venue; (2) witness convenience and access; (3) the convenience of the parties; and (4) the interest of justice.'" *JTH Tax, Inc., v. Lee*, 482 F. Supp. 2d 731, 736 (E.D. Va. 2007)(quotation omitted).[2]

### 1. Plaintiff's Choice of Venue

"The initial choice of forum, from among those possible, is a privilege given to the plaintiff." *Medicenters of America., Inc.*, 371 F. Supp. at 1183-84. Accordingly the "plaintiff's choice of venue is entitled to substantial weight." *Id.* (citing *Hanover Ins. Co. v. Paint City Contractors, Inc.*, 299 F. Supp. 2d 554, 556 (E.D. Va. 2004)). In this case, Reynolds has chosen the Eastern District of Virginia, Richmond Division, as the forum, and it follows that this choice should not be disturbed unless other factors considerably outweigh this choice. Richmond is where Reynolds maintains it principal place of business and it operates substantial business activities out of that office. Accordingly, there is "a strong presumption in favor of the plaintiff's choice of forum, which may be

---

[2] The Court must also consider whether the claims might have been brought in the transferee forum, but Plaintiff has conceded that the claims could have been brought in the District of New Jersey.

overcome only when the private and public factors clearly point toward trial in the alternative forum." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981).

## 2. Witness Convenience and Access to Sources of Proof

The second factor of witness convenience and access to sources of proof is "often the most important in balancing for a potential §1404(a) transfer, but the influence of this factor may not be assessed without reliable information identifying the witnesses involved and specifically describing their testimony." *JTH Tax*, 482 F.Supp. 2d at 737. Additionally, the "party asserting witness inconvenience has the burden to proffer, by affidavit or otherwise, sufficient details respecting the witnesses and their potential testimony to enable the court to assess the materiality of evidence and the degree of inconvenience," *Koh*, 250 F.Supp.2d at 636, and can draw upon factors such as the "ease of access to sources of proof, the cost of obtaining the attendance of witnesses, and the availability of compulsory process." *Samsung Elecs. Co. v. Rambus, Inc.*, 386 F. Supp. 2d 708, 717 n.13 (E.D. Va. 2005).

Concerns regarding the ease of access to sources of proof are not compelling in this case at this point because the "volume of documents pertinent to this case in not likely large enough to affect the transfer calculus," and because it is reasonable to assume that Pai's employment documents may be in the possession of Reynolds at its headquarters in Richmond. *Goldman*, 337 F. Supp. 2d at 800. As to the cost and convenience of obtaining the attendance of witnesses, although Pai states that all

16

witnesses will have to come from either Illinois, Pennsylvania or New Jersey, she has not specifically identified any witnesses in New Jersey. Logically, many of the witnesses will be Reynolds' employees. Plaintiff has agreed to defray the expense of their employees traveling to Virginia in connection with this case. The Court is not persuaded that Pai has met her burden of showing that Virginia would be more inconvenient than New Jersey for these witnesses or any others. The Court will also not consider the ease of compulsory process as there is no suggestion that witnesses will have to be compelled.

### 3. Convenience of the Parties

When evaluating the convenience of the parties, "the logical starting point is a consideration of the residence of the parties." *JTH Tax*, 482 F.Supp.2d at 738. As previously noted, Reynolds has its principal place of business in the Eastern District of Virginia, and while it may be more inconvenient for Pai to travel to this forum from New Jersey, transferring the venue would merely switch the inconvenience of the forum from Pai to Reynolds. Additionally, this court recognizes that it is always less convenient for a party to litigate outside of his or her home state. As Pai's previous 33 business-related trips to Richmond, Virginia indicate, even though it may be burdensome to travel to the forum state, it is not excessively so. "A party seeking such discretionary transfer 'bears the burden of demonstrating that the balance of convenience among the parties and witnesses is strongly in favor of the forum to which transfer is sought." *Nossen v. Hoy*,

750 F.Supp. 740, 742 (E.D. Va.1990) (internal quotations omitted). The Court finds that Defendant has not met this burden.

### 4. Interests of Justice

An analysis of the interests of justice includes circumstances such as "the pendency of a related action, the court's familiarity with the applicable law, docket conditions, access to premises that might have to be viewed, the possibility of unfair trial, the ability to join other parties, and the possibility of harassment." *Aceterna, L.L.C. v. Adtech, Inc.,* 129 F. Supp. 2d 936, 940 (E.D. Va. 2001) (citation omitted). Pai concedes that not all of these factors are at issue here, but does claim that the pendency of related actions and the Court's familiarity with applicable law weigh in favor of transfer to the District of New Jersey.

Although Pai cites a pending wrongful termination action in the Superior Court of New Jersey, as well as possible consolidation or related action against the named parties in New Jersey, Pai has not put forward any evidence to indicate why these matters must be litigated in the same forum. Additionally, to the extent that the law of New Jersey may be applied, federal courts are regularly called upon to apply the law of other states. Therefore, in considering the Plaintiff's choice of venue, witness convenience and access to sources of proof, convenience of the parties, and the interests of justice, this Court does not find a sufficient basis to support a transfer of venue to the United States District Court for the District of New Jersey.

## V.

In the final analysis, the Court finds that it has personal jurisdiction over the Defendant and that the United States District Court for the Eastern District of Virginia is an appropriate venue. Accordingly, the Court will deny Defendant's Motion to Dismiss for Lack of Personal Jurisdiction or Venue. Additionally, the Court finds that the Defendant has not met her burden to overcome the substantial weight given to the Plaintiff's choice of forum. Defendant's Motion to Transfer Venue is denied at this point with leave to refile if information gathered through discover warrants.

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
United States District Judge

Date: March 25, 2010
Richmond, VA